UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**YELLOWSTONE MOUNTAIN CLUB, LLC**,<br><br>Debtor. | Case No. **08-61570-11** |
| **MICHAEL SNOW**, **Greg C Branch**, **A.C. Markkula**, **Linda Markkula**, **Spano Yellowstone Holdings Limited Partnership**, **Robert P. Watson**, **Katharine M. Watson**, **Bankers Financial Corporation**, and **Mountain Vista Properties AG**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**BLX Group, Inc. F/k/a Blixseth Group, Inc**, **Timothy L. Blixseth**, **Edra D. Blixseth**, **John Does 1- 15**, and **ABC Companies 1-15**,<br><br>Defendants. | Adv No. **09-00018** |

## *MEMORANDUM of DECISION*

At Butte in said District this 8th day of September, 2009.

In this Adversary Proceeding, after due notice, a hearing was held August 11, 2009, in Butte on the Defendant Timothy L. Blixseth's ("Blixseth") "Motion to Dismiss Adversary Proceeding for Lack of Subject Matter Jurisdiction, or in the alternative, to Determine Noncore Proceedings, to Abstain, and for Stay" filed April 3, 2009, at docket entry no. 15, together with

1

the objections thereto by the Plaintiffs, also referred to as Class B shareholders, and Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust.  Joel E. Guthals of Billings, Montana appeared at the hearing to prosecute Blixseth's Motion.  The Plaintiffs were represented at the hearing by Mary L. Knoblauch of Minneapolis, Minnesota and Marc. S. Kirschner was represented by Shane P. Coleman of Billings, Montana.  The Court heard argument from counsel, but no witness testimony or exhibits were offered.  At the conclusion of the hearing, the Court took the matter under advisement and it is now ready for decision.  This Memorandum of Decision sets forth the Courts findings of fact and conclusions of law.

> Blixseth filed the pending Motion on April 3, 2009, seeking:
>
> (1) to dismiss the claims against him in this Adversary Proceeding for lack of subject matter jurisdiction under 28 U.S.C. § 1334(b); (2) to dismiss the claims against him in this Adversary Proceeding for lack of subject matter jurisdiction under the requirements of Article III of the US Constitution and *Northern Pipeline*; (3) to dismiss the claims against him in this Adversary Proceeding for lack of subject matter jurisdiction under 28 U.S.C. § 157(b)(5); (4) a determination that the claims asserted against him are noncore proceedings under 28 U.S.C. § 157(b)(3); (5) to abstain from hearing this Adversary Proceeding under 11 [sic] U.S.C. §1334(c)(1); and (6) to stay this Adversary Proceeding pending determination by the Federal District Court of his Motion to Withdraw the Reference.

In connection with the aforementioned Motion, Blixseth also filed on April 7, 2009, a Motion to Withdraw the Reference.  In an Order entered April 7, 2009, the Court granted Blixseth's motion to stay this Adversary Proceeding pending a determination by the United States District Court regarding Blixseth's Motion to Withdraw the Reference.  In an Order entered June 16, 2009, the Honorable Richard F. Cebull, District Judge, United States District Court, denied Blixseth's motion without prejudice, concluding that it was unclear at that time "the extent to which the claims may have an effect on the bankruptcy estate or directly relate to the debtor-creditor

relationship." Also, on April 17, 2009, the Court entered an Order concluding that the automatic stay in Edra D. Blixseth's personal bankruptcy (Bankruptcy Case No. 09-60452-7), did not apply to Blixseth's defense or further proceedings against him in this Adversary Proceeding, regardless of whether it remains in this Court or is transferred to the United States District Court.

As it relates to the Debtors, Credit Suisse filed a complaint against the Official Committee of Unsecured Creditors and the Debtors on February 25, 2009, thereby commencing Adversary Proceeding No. 09-00014, and the Official Committee of Unsecured Creditors filed a complaint against Credit Suisse on March 3, 2009, thereby commencing Adversary Proceeding No. 09-00017. The two aforementioned Adversary Proceedings were consolidated on March 3, 2009. The Debtors, Credit Suisse and the Official Committee of Unsecured Creditors agreed on a scheduling order, which set April 1, 2009, as the deadline to identify expert witnesses and submit expert written reports, and set April 22, 2009, as the date upon which the trial would commence. The Court reluctantly allowed Blixseth to intervene in the above adversary proceedings on March 24, 2009, because Blixseth was "so situated that disposing of the action may as a practical matter impair and impede his ability to protect his interest and that his interest is not adequately represented by the present parties in" those adversary proceedings.

On March 30, 2009, the Plaintiffs in this Adversary Proceeding filed a motion to consolidate this Adversary Proceeding with consolidated Adversary Proceeding Nos. 09-00014 and 09-00017. Following an emergency hearing held March 31, 2009, the Court entered an Order denying the Plaintiffs' Motion to consolidate this Adversary Proceeding with the previously consolidated Adversary Proceedings on grounds that the Plaintiffs' motion to consolidate did "not fit with the present Scheduling Order in Adversary Proceeding 09-00014,

3

which direct[ed] that all expert witnesses be identified and their written reports be submitted to opposing counsel by April 1, 2009." However, the Court granted the Plaintiffs' alternative relief by concluding that any ruling in Adversary Proceeding Nos. 09-00014 and 09-00017 would not have a preclusive effect on the claims raised by the Plaintiffs in this action.

Subsequent to the Court's March 31, 2009, denial of the Plaintiffs' request to consolidate this Adversary Proceeding with consolidated Adversary Proceeding Nos. 09-00014 and 09-00017, trial in consolidated Adversary Proceeding Nos. 09-00014 and 09-00017 commenced on April 29, 2009, and concluded on May 6, 2009. Following conclusion of the trial on May 6, 2009, the Court entered a partial and interim order on May 12, 2009, which partial and interim order has since been vacated. The Court then concluded in a Memorandum of Decision and Orders entered June 11, 2009, that it would deny Blixseth's motions to dismiss, but would continue the trial in consolidated Adversary Proceeding Nos. 09-00014 and 09-00017. A scheduling conference was held August 12, 2009, and the trial in consolidated Adversary Proceeding Nos. 09-00014 and 09-00017 is scheduled to continue on February 24, 2010.

Also, the Debtors' Third Amended Plan of Reorganization was confirmed by the Court on June 2, 2009, and pursuant to the confirmed Plan, the Yellowstone Club Liquidating Trust was established as the successor-in-interest to the Debtors and their bankruptcy estates. The Yellowstone Club Liquidating Trust is charged with identifying and monetizing assets. On September 3, 2009, Marc. S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust, moved in the consolidated Adversary Proceedings to substitute the Yellowstone Club Liquidating Trust in place of the Official Committee of Unsecured Creditors (the "Committee") and Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC and

Yellowstone Club Construction Company, LLC (the "Debtors"), as the party Defendant/Counterclaimant in that action.

## HISTORICAL BACKGROUND

Through the Debtors' jointly administered Chapter 11 bankruptcies and through the various other proceedings, including the six day trial in the consolidated Adversary Proceedings, the records show that Blixseth and his former wife, Edra Blixseth ("Edra"), formed the Debtor corporations on land that Blixseth acquired through various transactions, and began development in the late 1990s of the world's only private ski and golf community, commonly referred to as the Yellowstone Club. The Yellowstone Club is a membership only master-planned unit development, situated on 13,500 acres of private land in Madison County, Montana near Big Sky, Montana.

The Yellowstone Mountain Club, LLC ("YMC") is primarily engaged in operating the Yellowstone Club. YMC was established in 1997. Yellowstone Development, LLC ("YD") was established in 1999 and is engaged primarily in the business of retail and land sales and development of residential lots in the Yellowstone Club. Big Sky Ridge, LLC ("BSR") was formed in 2002 for the purpose of acquiring and developing land located outside but contiguous to the boundaries of the Yellowstone Club. YMC and YD have two classes of members; Class A members, who have voting rights, and Class B non-voting members. It appears that Yellowstone Club Construction Company is owned by YD and was formed in 2006 for the purpose of constructing various buildings within the boundaries of the Yellowstone Club.

Blixseth and Edra held an 82% interest in YMC and YD as Class A members. The Plaintiffs owned an 7.1428% interest in YMC and YD as Class B members. The remainder

interest in YMC and YD was or is apparently owned by the Blixseth Family Trust.

On September 30, 2005, the Debtors were controlled by Blixseth as the sole Class A Shareholder through his holding company, Blixseth Group, Inc. ("BGI"). BGI was an Oregon sub-S corporation, which was solely owned by Blixseth as President and CEO from 1999 to mid-August of 2008, when Blixseth relinquished control of BGI and the Yellowstone Club to Edra as part of the couple's marital settlement agreement.

In or around December of 2004, Jeffrey Barcy ("Barcy"), a Director in Credit Suisse's Investment Banking Division, contacted Blixseth to see if Blixseth and the Yellowstone Club would be interested in obtaining a loan from Credit Suisse. Blixseth originally declined Credit Suisse's loan offer, but then contacted Barcy a couple months later and said that he might have an interest in a loan after all. After several months of negotiations between Credit Suisse First Boston and Blixseth, the proposed amount of the loan grew from $150 million to $375 million.

During his negotiations with Credit Suisse, Blixseth formed an in-house team to assist with pursuing the Credit Suisse loan. That team consisted of Blixseth, Edra, Chris Campbell, Robert Sumpter (Vice President of Real Estate Development), Charlie Callander (Vice President of Sales), Bill Griffon (Vice President of Operations), Hank Kashiwa (Vice President of Marketing), Bruce Bales (Director of Privacy) and Denise Tuohy (Controller). Blixseth's team also included lead attorney Michael W. Doyle ("Doyle"), attorney Stephen R. Brown, and Blixseth's and the Debtors' accountant, George Mack.

Credit Suisse, Cayman Islands Branch, and Blixseth, on behalf of the Debtors, eventually entered into a credit agreement dated September 30, 2005 ("Credit Agreement"). Similar to the syndicated loans to Tamarack Resort, Promontory, Ginn, Turtle Bay and Lake Las Vegas, the

6

Yellowstone Club Credit Agreement was originally drafted to provide that the proceeds of the loan would be used, in part, for "distributions" to members of the Borrower for purposes unrelated to the Yellowstone Development. During the same period of time that Blixseth was negotiating with Credit Suisse for his loan, Blixseth was also attempting to buy the interests of the B shareholders under the pretense that Blixseth wanted to repurchase the "B" shares for estate planning purposes and to involve his children in ownership of the Yellowstone Club. Not all the B shareholders agreed to Blixseth's proposed purchase and Blixseth withdrew his offer in November of 2005.

Coincidentally, in late August of 2005 or early September of 2005, about the same time that Blixseth was unsuccessful in buying the B shareholders' interests, Blixseth was allegedly advised by Doyle and George Mack that he would have to take the Credit Suisse loan proceeds as a loan rather than a distribution. The reasoning was two-fold. First, Blixseth would incur a substantial tax liability on a distribution. Second, recording such a large distribution on the Debtors' books would result in negative owners' equity accounts.

After several months of negotiations, Credit Suisse and Blixseth finally came to an agreement on the terms of the Credit Agreement and executed the same. The Credit Agreement provided the Debtors with a $375 million Senior First Lien Credit Facility, which was funded in its entirety on September 30, 2005. In accordance with the Credit Agreement and upon closing the loan on September 30, 2005, $24.2 million was disbursed to pay off certain existing indebtedness, $8.7 million was disbursed for transaction costs, and $342.1 million was disbursed to the Debtors. The $342.1 million that were disbursed to the Debtors were distributed in two significant ways. First, the Credit Agreement designated up to $209 million of the loan proceeds

to be used as "distributions or loans" for "purposes unrelated" to the Yellowstone Club. Additionally, up to $142 million was authorized to be used for investments into "unrestricted subsidiaries" for "purposes unrelated" to Yellowstone Club development. Thus, the bulk of the loan proceeds were designated to be used for purposes outside of, and unrelated to, the Yellowstone Club.

The $375 million loan from Credit Suisse to the Debtors is at the heart of consolidated Adversary Proceeding Nos. 09-00014 and 09-00017. That same loan agreement is also at the heart of this Adversary Proceeding.

## APPLICABLE LAW and DISCUSSION

Turning to the matter now before the Court, 28 U.S.C. § 1334(b) confers upon federal district courts original but not exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 157(a) of Title 28 permits federal district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy courts. The United States District Court for the District of Montana has made such a reference by Standing Order 12.

In order for a bankruptcy court to entertain a proceeding, the proceeding must, at a minimum, be "related to" a case under title 11. A proceeding is "related to" a case under title 11 if "the outcome of [that] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Great Western Sav. v. Gordon (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3rd Cir. 1984)). As articulated, a proceeding is "related to" a bankruptcy "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any

way impacts upon the handling and administration of the bankrupt estate." *Id.* *See also Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir. 1990).

With respect to "related to" jurisdiction, the Court in *Pacor*, 743 F.2d at 994, explained:

> [J]udicial economy itself does not justify federal jurisdiction. *See generally Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). '[J]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.' *In re Haug, 19 B.R. 223, 224-25 (Bankr.D.Ore.*1982); *See also In re McConaghy,* 15 B.R. 480, 481 (Bankr.E.D.Va.1981) (Bankruptcy court lacks jurisdiction to decide disputes between third parties in which the estate of the debtor has no interest). (C.A.Pa.,1984).

Section 1334 requires a sufficient nexus between the case or proceeding and the bankruptcy in order for subject matter jurisdiction to exist and meet constitutional requirements. The bankruptcy courts' "related to" jurisdiction cannot be limitless. *Celotex Corp v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493, 131 L.Ed. 403 (1995). The U.S. Supreme Court stated in *Celotex* that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor."

Blixseth argues that this case should be dismissed because "[t]he claims against Mr. Blixseth involve a private dispute that has no effect on the Debtors or their assets." The Court disagrees. It is clear to the Court that the issues raised by the Plaintiffs in this Adversary are intertwined with the issues presented in the consolidated Adversary Proceedings and some of the issues raised in this Adversary Proceeding may in fact be derivative claims that involve potential assets of the Debtors' bankruptcy estates. Short of involving potential assets of the Debtors' bankruptcy estates, the Plaintiffs' claims in this action will undoubtedly affect the administration of the Debtors' bankruptcy estates.

Moreover, as persuasively noted by the Trustee of the Yellowstone Club Liquidating Trust, pursuant to Section 5.3.3 of the Liquidating Trust Agreement, the form of which was attached to the Debtors' confirmed Third Amended Plan of Reorganization as Schedule 1.85, the Plaintiffs in this action have the right to negotiate the transfer of the claims brought in this Adversary Case to the Liquidating Trust in exchange for *pari passu* claims treatment with other Class 4 and 8 unsecured creditors.

> 5.3.3. subject to the provisions of ¶ 4.2.5, to enter into post-Effective Date agreements with holders of B Equity Interests whereby holders of B Equity Interests may contribute valuable consideration to Trust (including their direct causes of action, if any, against insiders/affiliates or the proceeds thereof) in return for rights to participate in distributions from the Liquidating Trust of proceeds of litigation claims against insiders/affiliates.

This Court has expressly reserved jurisdiction over matters "provided in the Plan" which includes the Liquidating Trust. Because the Debtors' Plan expressly contemplates that the claims in this case may become assets of the Liquidating Trust and because the Court retains jurisdiction over such matters, this Adversary Proceeding arguably is a core proceeding within the meaning of 28 U.S.C. § 157. For the reasons discussed above, the Court finds that Blixseth's Motion to Dismiss is without merit and should be denied.

While not grounds for dismissal, Blixseth continues his argument that this matter should be tried in the District Court before a jury. A party's right to a jury trial is grounded in the Seventh Amendment to the United States Constitution, which provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved...." U.S. CONST. amend. VII. The Seventh Amendment only preserves the right to a jury trial for suits at common law, not suits based in equity. To ascertain whether a

party has a Seventh Amendment right to a jury trial, the Supreme Court, in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)*,* articulated a three-part test for determining whether claims are legal or equitable: "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature." 492 U.S. at 42, 109 S.Ct. 2782 (quoting *Tull v. United States,* 481 U.S. 412, 417-418, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)).  However, the Supreme Court reiterated that "characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial." *Tull*, 481 U.S. at 421, quoting *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).  Finally, "if, on balance, [the] above two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, [a court] must [then] decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder." *Granfinanciera,* 492 U.S. at 42*.*

In a more recent decision, the Ninth Circuit Court of Appeals ruled that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court.  Instead, the bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters." *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007).  The above excerpt clarifies that this Court has jurisdiction to determine all pretrial matters in this Adversary Proceeding, irrespective of any of the parties' right to a jury trial.

The issue as to Blixseth's right to a trial by jury can be decided at a later date.  In

addition, because the issues of this Adversary Proceeding are so intertwined with the issues in the consolidated Adversary Proceedings, and because trial in both matters will involve presentation of much of the same evidence, the Court deems it appropriate to sua sponte reconsider its Order of March 31, 2009, by administratively consolidating this Adversary Proceeding with consolidated Adversary Proceeding Nos. 09-00014 and 09-00017. To accommodate the existing scheduling order, the Defendants shall have through September 22, 2009, to file an answer to the Plaintiffs' Complaint.

Consistent with the foregoing, the Court shall enter the following separate order:

IT IS ORDERED that Defendant Timothy L. Blixseth's "Motion to Dismiss Adversary Proceeding for Lack of Subject Matter Jurisdiction, or in the alternative, to Determine Noncore Proceedings, to Abstain, and for Stay" filed April 3, 2009, at docket entry no. 15, is DENIED;

IT IS FURTHER ORDERED that for purposes of trial, this Adversary Proceeding is consolidated with Adversary Proceeding Nos. 09-00014 and 09-00017; and

IT IS FURTHER ORDERED that the Defendants shall file on or before September 22, 2009, an Answer to the Plaintiffs' Complaint.

IT IS FURTHER ORDERED that the pretrial scheduling order in effect in Adversary Proceeding Nos. 09-00014, Doc. No. 302, and 09-00017, shall govern the proceedings in this Adversary Proceeding.

                                      BY THE COURT

                                      HON. RALPH B. KIRSCHER
                                      U.S. Bankruptcy Judge
                                      United States Bankruptcy Court
                                      District of Montana